IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| S.J.[1] | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FRANK BISIGNANO, | : | NO.  23-2886 |
| Commissioner of Social Security | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                         September 8, 2025

Plaintiff seeks review of the Commissioner's decision denying her applications for

supplemental security income ("SSI") and disability insurance benefits ("DIB").  For the

reasons that follow, I conclude that the decision of the Administrative Law Judge

("ALJ") is supported by substantial evidence and affirm the Commissioner's decision.

## I.    PROCEDURAL HISTORY

According to the ALJ's decision, Plaintiff applied for SSI and DIB on October 21,

2020, and February 1, 2021, respectively, alleging disability as of May 16, 2020, later

amended to March 26, 2019.  Tr. at 19.[2]  Plaintiff alleged disability based on back pain,

---

[1]Consistent with the practice of this court to protect the privacy interests of plaintiffs in social security cases, I will refer to Plaintiff using her initials.  See Standing Order – In re:  Party Identification in Social Security Cases (E.D. Pa. June 10, 2024).

[2]For purposes of SSI, the earliest month for which benefits can be paid "is the month following the month [the claimant] filed the application," if the claimant meets all the other requirements for eligibility.  See 20 C.F.R. § 416.335.  To be entitled to DIB, Plaintiff must establish that he became disabled on or before his date last insured.  20 C.F.R. § 404.131(b).  The Certified Earning Record indicates and the ALJ found that Plaintiff was insured through June 2019.  Tr. at 22, 240.
Plaintiff's prior applications for SSI and DIB were denied by an ALJ on March 25, 2019, and the Appeals Council upheld the denial on May 15, 2020.  Tr. at 70-82, 87-89.

knee pain, hypertension, stomach problems, diverticulitis, and mental health issues.  Id. at 257.[3]  Her applications were denied initially, id. at 139-46, and on reconsideration, id. at 150-52, and she requested an administrative hearing.  Id. at 153-55.  After holding a hearing on November 16, 2022, id. at 38-66, the ALJ issued an unfavorable decision on November 28, 2022.  Id. at 19-33.  The Appeals Council denied Plaintiff's request for review on May 26, 2023, id. at 1-5, making the ALJ's November 28, 2022 decision the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.  Plaintiff sought review in federal court on July 27, 2023 (Doc. 1), and the matter is now fully briefed and ripe for review.  Docs. 10-12.[4]

## II.    LEGAL STANDARD

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusions that Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla."  Zirnsak v. Colvin, 777 F.2d 607, 610 (3d Cir. 2014) (quoting Rutherford v.

It appears that Plaintiff filed the present applications rather than seek further review of the denials.

[3]The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  See Standing Order – In Re: Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Doc. 4.

Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 587 U.S. 97,

103 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v.

NLRB, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues.

Schaudeck, 181 F.3d at 431.

    To prove disability, a claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for . . . not less than twelve

months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process,

evaluating:

> 1.    Whether the claimant is currently engaged in substantial gainful activity;
>
> 2.    If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities that has lasted or is expected to last for a continuous period of 12 months;
>
> 3.    If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4.    If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform her past work; and
>
> 5.    If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R.

§ 416.920(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the

burden shifts to the Commissioner at the fifth step to establish that the claimant is capable

of performing other jobs in the local and national economies, in light of her age,

education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88,

92 (3d Cir. 2007).

## III.    **DISCUSSION**[5]

### A.    **ALJ's Findings and Plaintiff's Claims**

In the November 28, 2022, decision, the ALJ found at step one that Plaintiff has

not engaged in substantial gainful activity since March 26, 2019, her alleged onset date.

Tr. at 22.  At step two, the ALJ found that Plaintiff suffers from several severe

impairments; degenerative disc disease of the lumbosacral spine (mild), degenerative

joint disease and chondromalacia of the patella, sclerosis of the distal left femur, morbid

obesity, major depressive disorder, and post-traumatic stress disorder ("PTSD").  Id. at

21-22.  At step three, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of one of the

Listings.  Id. at 21.

The ALJ determined that Plaintiff retains the RFC to perform sedentary work, but

must be allowed to alternate between sitting and standing positions at one-hour intervals

while remaining at her workstation; may frequently use foot controls; must never climb

---

[5] Two pages of the ALJ's decision are out of order.  Tr. at 21-22 (reversing pages
2 and 3 of the opinion).

ladders, ropes, or scaffolds; must never kneel, crouch, or crawl; may occasionally climb ramps or stairs and occasionally stoop; may frequently balance; and must avoid concentrated exposure to extreme cold and excessive vibration and avoid all exposure to hazardous machinery and unprotected heights.  Tr. at 25.  The ALJ also found that Plaintiff is able to understand, remember, and carry out simple tasks with only occasional changes in the work setting; can have no interaction with the public, only occasional interaction with coworkers with no tandem tasks; and only occasional over-the-shoulder supervision.  Id. at 25-26.  Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform her past relevant work as a store clerk, a nurse's aide, or a home attendant.  Id. at 31.  However, the ALJ concluded that Plaintiff is not disabled, because there exists other work in the national economy that she can perform.  Id. at 33.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because (1) the ALJ improperly discounted the opinion of the state agency medical consultant who found that Plaintiff had "marked" limitations in some areas of work-related functioning, and (2) the ALJ failed to include all of those limitations in the RFC finding or in his hypothetical question to the VE.  Docs. 10 & 12.  Defendant responds that the ALJ's evaluation of the opinion evidence is supported by substantial evidence. Doc. 11.

**B.**     **<u>Plaintiff's Claimed Limitations and Testimony at the Hearing</u>**[6]

Plaintiff was born on January 4, 1976, and thus was 43 years of age on her alleged SSI onset date (March 26, 2019), and 46 years of age when she applied for DIB (November 16, 2022) and at the time of the ALJ's decision (November 22, 2022).  <u>Tr.</u> at 45-46.  She received her GED, <u>id.</u> at 46, 258, and has prior work experience as a store clerk, a nurse's aide, and a home attendant.  <u>Id.</u> at 258-59, 274.[7]

At the administrative hearing, Plaintiff testified that she is unable to work due to anxiety and panic attacks, and because she does not like people touching or being near her and does not do well relating or talking to others.  <u>Tr.</u> at 48.  She stated that she suffers from depression and PTSD.  <u>Id.</u> Plaintiff explained that her PTSD affects her ability to function in the workplace, as social interactions are taxing for her, and she feels uncertain about how to appropriately engage with colleagues.  <u>Id.</u> at 49-50.  She recounted an incident in which she became anxious when a supervisor stood over her as she performed a task, which ultimately led to her termination.  <u>Id.</u> at 50-51.  She reported

---

[6]Because Plaintiff challenges only the ALJ's findings related to her mental impairments, I limit my review of the testimony to those impairments.  I will similarly limit my review of the medical record.

[7]The ALJ relied on VE testimony from the hearing on Plaintiff's prior application in stating that Plaintiff performed the store clerk position at a medium exertional level and the nurse's aide position at a medium to heavy level.  <u>Tr.</u> at 31.

attending weekly therapy sessions and taking psychiatric medication, most recently Paxil[8] and Abilify.[9]  Id. at 48-49.

Plaintiff testified that since her previous denial of benefits, her condition has "got[ten] a little worse."  Tr. at 47.  She explained that on some days she does not want to go outside and neglects self-care, noting, for example, that she had not bathed in weeks. Id. at 47-48.  She also reported that since her previous denial of benefits, she had gotten back together with her ex-husband, but that relationship ended again because of physical, emotional, and sexual abuse.  Id. at 52-53.

A VE also testified at the administrative hearing.  Tr. at 56-65.  Based on the hypothetical posed by the ALJ with the limitations included in the ALJ's RFC assessment, see supra at 4-5, the VE testified that such an individual could not perform Plaintiff's past relevant work.  Id. at 57-58.  However, the VE testified that there exists other jobs in the national economy that such an individual could perform, such as assembler, inspector, and office clerical work.  Id. at 58.  The VE indicated, in response to questioning by Plaintiff's counsel, that if the individual were unable to handle any changes in the work setting or were frequently unable to handle such changes, this would preclude all work.  Id. at 61, 65.

_____

[8]Paxil is a selective serotonin reuptake inhibitor ("SSRI") primarily used to treat depression and anxiety disorders.  https://www.mayoclinic.org/drugs-supplements/paroxetine-oral-route/description/drg-20067632 (last visited Sept. 4, 2025).

[9]Abilify is an antipsychotic medication used to treat several kinds of mental health conditions, such as bipolar disorder.  https://my.clevelandclinic.org/health/drugs /19695-aripiprazole-tablets (last visited Sept. 4, 2025).

C.     **Medical Evidence Summary**

In late 2017, Plaintiff presented herself to the Joseph J. Peters Institute ("JJPI") for a psychological evaluation, disclosing that she was physically and sexually abused throughout her childhood, and that she had experienced emotional abuse as an adult, had difficulty sleeping, and felt depressed.  Tr. at 339.  As a result of the evaluation, she was diagnosed with PTSD and persistent depressive disorder with major depressive episodes, with contributing circumstances of sexual, physical, and psychological abuse and neglect in childhood, exposure to violence as a child, and spouse or partner psychological abuse. Id. at 345.  JJPI recommended outpatient therapy and that she should take her medications as prescribed and be routinely monitored by medical professionals.  Id. at 345-46.  Progress notes from the date of the evaluation through June 29, 2022, note that Plaintiff was receiving weekly therapy through JJPI, and certain notes indicate that Plaintiff was to continue her medication checks and to take her medications as prescribed by her psychiatrist.  Id. at 402-24, 919-22, 960-76.

On May 25, 2021, Sheri Balsam, Psy. D. performed a consultative mental status evaluation of Plaintiff.  Id. at 804-16.  Plaintiff reported that she lived with her three children and that she dressed, bathed, and groomed herself irregularly due to symptoms of depression.  Id. at 806.  Plaintiff stated that she could spend several days at a time in her room without showering or doing laundry.  Id.  She also reported difficulties managing her finances and denied socializing or maintaining family relationships outside of time spent with her children.  Id. at 805-06.  Plaintiff reported receiving weekly treatment from JJPI for the past two years.  Id.  Regarding her current functioning, the

report highlights problems including difficulty falling asleep, loss of appetite, dysphoric moods, crying spells, trouble concentrating, difficulty getting out of bed, excessive anxiety and worry around new people, avoidance of social situations, fear of crowds, experiences of trauma, panic attacks, and deficits in both short-term and long-term memory, particularly trouble recalling dates.  Id. at 805.

Dr. Balsam characterized Plaintiff's demeanor as cooperative, with an adequate manner of relating and fair personal hygiene and grooming.  Tr. at 805.  She observed Plaintiff's motor behavior as lethargic, with appropriate eye contact, mumbled speech, and an atonal voice quality.  Id.  Both expressive and receptive language skills were adequate.  Id. at 806.  Plaintiff's thought processes were coherent, her affect flat, mood dysthymic, sensorium clear, and orientation normal.  Id.  Dr. Balsam found Plaintiff's attention and concentration impaired, attributing this to emotional distress from anxiety and depression as well as physical pain, though she was capable of counting and performing simple calculations.  Id.  The doctor described Plaintiff's recent and remote memory as impaired and her intellectual functioning as below average, with a somewhat limited general fund of knowledge, and her insight and judgment were assessed as fair. Id.  Dr. Balsam diagnosed Plaintiff with major depressive disorder, social anxiety disorder, and generalized anxiety disorder.  Id. at 807.  She recommended that Plaintiff continue with individual therapy, and noted that Plaintiff would not be able to manage her own funds due to symptoms of anxiety and depression.  Id.

In a Medical Source Statement of Ability to do Work-Related Activities (Mental) ("Mental MSS"), Dr. Balsam identified moderate limitations in Plaintiff's ability to

understand, remember, and carry out simple instructions; make simple work-related decisions; and interact appropriately with coworkers and supervisors.  Tr. at 808-09.[10] Dr. Balsam further noted marked limitations in understanding, remembering, and carrying out complex instructions; making complex work-related decisions; interacting appropriately with the public; and responding effectively to usual work situations and changes in routine.  Id.  These impairments were attributed to symptoms of depression and anxiety.  Id. at 809.

Plaintiff was hospitalized for mental health treatment at the University of Pennsylvania Hospital from June 3-10, 2021.  Tr. at 817-19, 977-1211.  The stay began with Plaintiff's visit to the Crisis Response Center complaining of suicidal and racing thoughts related to marital difficulties.  Id. at 824.  She reported experiencing persistent suicidal ideation over an extended period and was unable to work due to both her physical health and psychological symptoms.  Id. at 826.  Plaintiff stated that she did not enjoy socializing, faced challenges in finding employment, and last experienced intense suicidal ideation approximately a year ago.  Id. at 824.  She struggled with a depressed mood, low energy, feelings of hopelessness, and racing thoughts.  Id.  Plaintiff also reported that she had been prescribed Lexapro but had not taken it for the past year, citing

---

[10]Dr. Balsam evaluated Plaintiff using a form which contains the following scale of limitations in the ability to function independently, appropriately, and effectively on a sustained basis: none (no limitation); mild (slight limitation); moderate (functioning is fair); marked (serious limitation), and extreme (unable to function).  Tr. at 808.

sedative side effects.  Id. at 825.[11]  Discharge notes reflect that Plaintiff exhibited and

described a positive response to medication (Lamotrigine)[12] although she continued to

report some mood variability and emotional lability, including episodes of tearfulness.

Id. at 985.  She told her occupational therapy group that she hoped to look for and get a

job after discharge.  Id. at 987, 1127.

On June 3, 2021, state agency psychologist Richard F. Small, Ph.D, performed a

review of Plaintiff's mental health records and completed a Psychiatric Review

Technique ("PRT") assessment as part of the initial disability determination.  Tr. at 103-

05.  Dr. Small opined that Plaintiff had medically determinable impairments in two

psychiatric categories -- anxiety and obsessive-compulsive disorders -- and that neither of

the impairments satisfied the diagnostic criteria of the Listings.  Id. at 104.  Dr. Small

noted mild limitations in Plaintiff's ability to understand, remember, or apply

information, and moderate limitations in her ability to interact with others, concentrate,

persist or maintain pace, and adapt or manage oneself.  Id.

In an accompanying mental RFC assessment, Dr. Small opined that Plaintiff's

ability to follow very short and simple instructions was not significantly limited.  Tr. at

111.  Similarly, her capacity to carry out detailed instructions, sustain an ordinary routine

---

[11]Lexapro is an SSRI primarily used to treat depression and anxiety disorders.
https://www.mayoclinic.org/drugs-supplements/escitalopram-oral-route/description/drg-
20063707 (last visited Sept. 4, 2025).

[12]Lamotrigine is an anticonvulsant medication used to treat epilepsy and stabilize
mood in people with bipolar disorder.  https:// my.clevelandclinic.org/health/drugs/2021
7-lamotrigine-tablets (last visited Sept. 4, 2025).

without special supervision, work cooperatively or in proximity to others without distraction, and make work-related decisions was also not significantly impaired.  Id. However, Dr. Small noted moderate limitations in the Plaintiff's ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, complete a normal workday and workweek without interruptions due to psychological symptoms, perform tasks at a consistent pace without excessive rest breaks and interact appropriately with the general public.  Id. at 111-12.  With respect to social interactions, she was not significantly limited in her ability to ask simple questions or request help, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and basic standards of neatness and cleanliness.  Id. at 112-13.  She was moderately limited in the ability to interact appropriately with the public. Id. at 112. Lastly, while Plaintiff's ability to respond appropriately to changes in the work environment was moderately limited, her awareness of normal hazards and ability to take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make independent plans were not significantly limited.  Id. at 113-14.

Dr. Small opined that Dr. Balsam's opinion overestimated the severity of Plaintiff's restrictions/limitations, noting that Plaintiff did not take behavioral medication, her opinion contrasted with the other evidence in the record, and third-party reports of her activities of daily living suggested mostly physical impairment.  Tr. at 115.

12

On November 4, 2021, Plaintiff underwent a consultative mental status evaluation by Martha DiPrinzo, M.A. Tr. at 924-35. Plaintiff reported difficulty falling asleep, frequent awakenings, a normal appetite, and episodes of depressed mood, dysphoria, crying spells, and social withdrawal. Id. at 925. Plaintiff denied suicidal or homicidal ideation but endorsed significant apprehension, worry, frequent restlessness, irritability and discomfort in crowds. Id. Additionally, Plaintiff described flashbacks, sleep disturbances, intrusive thoughts, and biweekly panic attacks. Id. Upon examination, Ms. DiPrinzo observed that Plaintiff was cooperative, displaying adequate social skills, manner of relating, and overall presentation. Id. at 926. Ms. DiPrinzo assessed Plaintiff's attention, concentration, and recent and remote memory as "mildly impaired" and her cognitive functioning as "average." Id. at 926-27. Ms. DiPrinzo diagnosed Plaintiff with depressive disorder and anxiety disorder, recommending continuation of outpatient mental health treatment as currently provided, with a fair prognosis. Id. at 927.

Ms. DiPrinzo also completed a Mental MSS. Tr. at 929-31. Ms. DiPrinzo found mild limitations in Plaintiff's ability to understand, remember, and carry out simple instructions, and to make judgments regarding simple work-related decisions. Id. at 929. Ms. DiPrinzo opined that Plaintiff had moderate limitations in her ability to understand, remember, and carry out complex instructions, and to make judgments on complex work-related decisions. Id. Ms. DiPrinzo further noted moderate limitations in Plaintiff's ability to interact appropriately with the public, supervisors, and coworkers, and to respond appropriately to usual work situations and to changes in routine work settings.

13

Id. at 930.  Like Dr. Balsam, Ms. DiPrinzo attributed these limitations primarily to Plaintiff's anxiety and depression.  Id.

On November 29, 2022, state agency psychologist Thomas E. Fink, Ph.D, performed a review of Plaintiff's mental health records and completed a PRT assessment as part of a reconsideration of Plaintiff's disability determination.  Tr. at 124-25.  He opined that Plaintiff had mild limitations in her ability to understand, remember or apply information, and moderate limitations in her ability to interact with others, concentrate, persist or maintain pace, and adapt or manage oneself.  Id. at 125.  In an accompanying mental RFC assessment, Dr. Fink opined that the Plaintiff was not significantly limited in her ability to carry out very short and simple or detailed instructions, perform activities within a schedule, maintain regular attendance and punctuality within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or near others without distraction, and make simple work-related decisions.  Id. at 130.  He noted moderate limitations in her ability to maintain attention and concentration for extended periods, and to complete a normal workday and workweek without interruptions from psychologically based symptoms, as well as in maintaining a consistent pace without an unreasonable number or length of rest periods.  Id.  Regarding social interaction, Dr. Fink found moderate limitation in Plaintiff's ability to interact with the general public.  Id.  However, her ability to ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and basic standards of cleanliness

were not significantly limited.  Id.  Finally, Plaintiff's ability to respond appropriately to changes in the work setting was moderately limited, while her ability to be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently was not significantly limited.  Id.  Dr. Fink reiterated Dr. Small's assessment of the shortcomings of Dr. Balsam's report.  Id. at 126.

### D.    Plaintiff's Claims

Plaintiff argues that that the ALJ improperly discounted Dr. Balsam's opinion that Plaintiff had marked limitations in several areas of work-related functioning, resulting in a flawed RFC assessment and erroneous step five determination.  Doc. 10 at 8-12; Doc. 12 at 1-3.  Specifically, he contends that Dr. Balsam's assessment was "supported" by her own objective mental status examination and "consistent" with evidence from both other medical and nonmedical sources.  Doc. 10 at 8-10.  According to Plaintiff, the ALJ's rationale for dismissing Dr. Balsam's opinion was based solely on a single sentence in his decision; that "the generally conservative, routine mental health treatment records do not support any marked mental limitations."  Id. at 10 (citing tr. at 30).  Defendant counters that the ALJ's consideration of the medical opinion evidence and RFC assessment are supported by substantial evidence.  Doc. 13 at 5-9.  Specifically, he claims that the ALJ articulated legally sufficient reasons for finding Dr. Balsam's opinion only partially persuasive, and that giving more weight to the opinion of a different consultative examiner was consistent with Plaintiff's mental status examinations and the fairly routine care she received.  Doc. 11 at 1, 9.

The ALJ's consideration of medical opinion evidence is governed by regulations which focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. §§ 404.1520c(a), 416.920c(a).[13]  The regulations list the factors to be utilized in considering medical opinions: supportability, consistency, treatment relationship including the length and purpose of the treatment and frequency of examinations, specialization, and other factors including familiarity with other evidence in the record or an understanding of the disability program.  Id. §§ 404.1520c(c), 416.920c(c).  The most important of these factors are supportability and consistency, and the regulations require the ALJ to explain these factors, but do not require discussion of the others. Id. §§ 404.1520c(b)(2), 416.920c(b)(2).  The regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  Similarly, "[t]he more consistent a medical opinion(s) . . .  is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be."  Id. §§ 404.1520c(c)(2), 416c(c)(2).

---

[13]In contrast, the regulations governing applications filed before March 17, 2017, spoke in terms of the weight to be given each opinion, including controlling weight for the opinions of certain treating sources.  20 C.F.R. §§ 404.1527, 416.927.

The change in the regulations did not change the basic rule that "[t]he ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Stewart v. Sec'y HEW, 714 F.2d 287, 290 (3d Cir. 1983)).  When there is a conflict in the evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as she does not "reject evidence for no reason or for the wrong reason."  Rutherford, 399 F.3d at 554; see also Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Here, following a narrative summary of the medical record of Plaintiff's mental impairments and Plaintiff's testimony and subjective complaints, tr. at 24-27, the ALJ addressed the medical opinion evidence, including the mental health opinions.  Id. at 27-30.  Regarding the opinions of the state agency medical consultant Dr. Balsam, who found marked limitations as to complex instructions, interacting with the public, and adapting, the ALJ found the opinion "partially persuasive," explaining that "the results of the psychological consultative examinations -- and the generally conservative, routine mental health treatment records -- do not support any marked mental limitations."  Id. at 29-30.  By contrast, in finding Ms. DiPrizno's opinion (moderate limitations only in interacting with others and in adapting) persuasive, the ALJ noted that her report was better supported, as aside from a single acute episode of depression requiring hospitalization, Plaintiff had received only routine mental health treatment.  Id.

Plaintiff complains that the ALJ failed to provide a reasonable basis for partially discounting the opinion of the State agency consultant Dr. Balsam.  Doc. 10 at 8-11; Doc.

12 at 1-6.  First, Plaintiff argues that the ALJ failed to explain why he found Dr. Balsam's finding of marked limitations unsupported, noting that he made only a "vague reference" to the results of the psychological consultative examinations.  Doc. 10 at 9.  Second, Plaintiff argues that the ALJ failed to dispute the consistency of Dr. Balsam's opinion with evidence from other medical and non-medical sources, including his purported failure to consider her mental health hospitalization.  Doc. 10 at 8-10.

If the ALJ's analysis were confined solely to the single sentence quoted by Plaintiff, viewed in isolation, remand might be justified; however, it is necessary to evaluate the ALJ's decision in accordance with the Third Circuit's guidance that ALJ opinions must be considered as a whole.  See Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).  An ALJ is not required to explicitly use the terms "support" and "consistent" for every medical opinion reviewed when making a determination.  See Zaborowski v. Comm'r of Soc. Sec., 115 F.4th 637, 639 (3d Cir. 2024) ("The statute requires [ALJs] to explain only the dispositive reasons for their decisions, not everything else that they considered.").  The level of detail necessary in the explanation need not be extensive, provided there is adequate record development and a sufficient explanation of findings to allow for meaningful judicial review.  Jones, 364 F.3d at 505.

In this case, after evaluating the complete record, the ALJ clearly explained why Ms. DiPrinzo's conflicting report was better supported and why Dr. Balsam's findings were inconsistent with both medical and non-medical evidence.  Also, the ALJ determined that Dr. Balsam's findings of marked limitations were undermined by the conservative, routine nature of the mental health treatment and the mostly mild to

18

moderate results observed in mental status examinations within the record.  Tr. at 29-30.

Additionally, the psychological consultative evaluation conducted by Ms. DiPrinzo did

not corroborate Dr. Balsam's conclusions.  Id.[14]

The ALJ thoroughly reviewed both the medical and non-medical evidence and

found Dr. Balsam's opinion of marked impairments to be inconsistent with the overall

record.  The ALJ determined that Plaintiff's alleged limitations conflicted with her

mental health treatment records and Ms. DiPrinzo's consultative evaluation.  For

example, the ALJ noted that Plaintiff's mental health treatment primarily consisted of

weekly therapy and medications -- most recently Paxil and Abilify -- and that Ms.

DiPrinzo's examination was "generally unremarkable," showing only mild impairments

in attention, concentration, recent and remote memory, and fair judgment and insight.  Tr.

at 26, 28.  Dr. Balsam's findings also conflicted with the opinions of Dr. Small and Dr.

Fink, who concluded that Plaintiff had only mild to moderate work-related limitations.

See id. at 30.

The ALJ further observed inconsistencies between Plaintiff's reported daily living

activities and her claimed impairments, both in the function reports she provided to the

state agency, and in her reporting to medical professionals.  Tr. at 27.  The ALJ

highlighted that Plaintiff lives independently, manages personal care, reads, shops online,

handles her finances, uses car services, cares for her children, and manages her medical

---

[14]It is worth noting here that Dr. Balsam's evaluation took place just one week
before Plaintiff's only psychiatric hospitalization, when Plaintiff had not been taking her
medication for a year, whereas Ms. DiPrinzo's took place almost four months after her
discharge.

care.  Id. at 29.  These activities are inconsistent with the mental limitations noted by Dr. Balsam.

The ALJ was able to observe Plaintiff at the hearing, and noted that she was cooperative, demonstrated appropriate social skills, answered all questions, and showed no apparent difficulties with attention, concentration, understanding, or memory.  Tr. at 26.  See De Marco v. Heckler, 616 F.Supp. 644, 647 (E.D. Pa. 1985 (noting that an ALJ may use his observations to reinforce a conclusion drawn from the medical evidence because credibility determinations are an important part of an ALJ's function).  With respect to Plaintiff's psychiatric hospitalization in June 2021, the ALJ noted that it occurred during a stressful period involving an abusive relationship with Plaintiff's then husband, where she felt overwhelmed with suicidal ideation and racing thoughts.  Tr. at 27.  The ALJ further observed that on the whole, Plaintiff's mental health has been stable with only weekly therapy and some medication.  Id.  Overall, the ALJ concluded based on the record that while Plaintiff's mental health impairments are generally controlled, they warrant limitations to simple tasks, occasional changes in the work setting, and restricted social interactions.

In sum, because the record reflects that Plaintiff received generally routine mental health care over the years and is capable of independently managing daily activities, substantial evidence supports the ALJ's decision to find the consultative opinion of Ms. DiPrinzo, as well as the agency doctors' opinions regarding mild-to-moderate mental limitations, more persuasive than Dr. Balsam's contrary opinion -- which was provided only one week before Plaintiff's hospitalization for an acute episode, at a time when

Plaintiff admittedly was not taking her psychiatric medication.  As previous discussed, the ALJ is required to evaluate all the medical opinions focusing on supportability and consistency.  Here, after a robust discussion of the medical and mental health treatment evidence, the ALJ did what the regulations required by evaluating each of the opinions and explaining the persuasiveness of each.

Because I conclude that the ALJ's RFC determination is supported by substantial evidence, I also find that the hypothetical limitations given to the VE, which incorporated Ms. DiPrinzo's mental limitations and was largely consistent with the assessments of Dr. Small and Dr. Fink, were appropriate and free from error.

## IV.    __CONCLUSION__

The ALJ provided a reasonable basis for finding the opinion of one agency consultant less persuasive than others.  Therefore, the ALJ's RFC assessment and step five determination are supported by substantial evidence.

An appropriate Order follows.